## STATE v DEVROUX

Municipal Court of Cleveland

Decided May 5, 1939

Henry Brainard, Cleveland and Henry Zwolinski, Cleveland, for city.

Jas. C Connell, Cleveland, and Robert Kaplan, Cleveland, for defendants.

## OPINION

By COPELAND, J.

The defendant is one of the owners of a restaurant and amusement hall located on Lake Shore Boulevard, Cleveland, Ohio. On the 13th day of April, 1939, said restaurant was open for business, the principal character of which business was that of supplying buffet lunches in the evening for which patrons paid fifty cents. In addition to luncheon there were sixteen acts of vaudeville.

It appears further that sometime prior to the aforesaid date this particular place of business had been closed and was reopened on said date under new management. the defendant being one of such new proprietors.

It appears further that in order to attract attention to its place of business and undoubtedly to encourage people to patronize them. the said management advertised through different media that they would permit any and all persons coming to their restaurant to participate in bingo free of charge and that cash awards would be made to the "lucky winners."

It appears further that the interior of the establishment of the defendant was divided into two separate parts. In one part, by paying fifty cents, one was ad-

mitted to a large dining hall where a buffet supper was served and entertainment was provided without any further charge. In the other part any other person entering said premises and not desiring to participate in the supper and entertainment, could gain admittance without let or hindrance and without any cost. All persons, whether in that part providing the luncheon and entertainment or in the "free" part, were given bingo cards, for which no charge whatsoever was made. Those in the "free" part of the premises could not view any of the entertainment, but were merely provided with seating accommodations at card tables.

The evidence further shows that at the time and date in question there were approximately eighty people in the dining and amusement part of the restaurant, while there were approximately twenty people in the "free" part of said premises.

It appears further that the defendant was on a platform visible to the people in both parts of the restaurant who called out numbers abstracted from a wheel and the regular routine of bingo proceeding, which routine will not be described by this court since undoubtedly it is familiar to most people.

It seems further that on the night in question five officers of the Cleveland Police Department entered said premises, two paying fifty cents each and entering the restaurant part of the premises and, incidentally, obtaining bingo cards with their luncheon, while three went to the "free" part of the premises and without cost similarly obtained bingo cards.

It seems further that a total of ten games of bingo were played and the prize to each winner amounted to $1.50.

It appears further that two of the officers in the "free" part each won one of these prizes and one of the officers in the other part similarly won one.

The defendant was thereafter arrested and charged with violation of §13064, GC, which forbids the promotion of a lottery. The matter duly came on for trial, after and at the close of which the court took the matter under advisement and now predicates its decision upon the foregoing facts and the law as it sees it in connection therewith.

**Section 13064, GC**, provides as follows:

"Promoting schemes of chance.—Whoever establishes, opens, sets on foot, carries on, promotes, makes, draws or acts as 'backer' or 'vender' for or on account of or is in any way concerned in a lottery 'policy', or scheme of chance, by whate r name, style, or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, or by any of such means, sells or exposes for sale anything of value, shall be fined not less than Fifty Dollars nor more t..an Five Hundred Dollars and imprisoned not less than ten days nor more than ninety days." .

A lottery has been defined as a species of gaming or a scheme for distribution of prizes by lot or chance among persons who have paid or agreed to pay a valuable consideration for the chance to obtain a prize.

It is well settled that in order to constitute a lottery within the meaning of §13064, GC, three essential elements must be present, namely (1) consideration, (2) chance and (3) a prize. (See **Fisher v State of Ohio, 14 Oh Ap 355**, decided February 7, 1921).

In the instant case there is no question about the elements of chance and prize being established.

However, we are concerned with the question as to whether or not there was consideration.

In the case of Yellowstone v State, 88 Ala. 196, the court there held that where the defendant gave a so-called patent medicine show in a tent accommodating about 1,000 people and where there was no charge for admission and before the exhibition, tickets were distributed to the public free of charge, each ticket entitling the holder to a chance for eight prizes, that this did not constitute a lottery since there was no consideration paid for the chance of participating in the distribution of the prizes, and this despite the fact that primarily the free attraction was made as a means of ultimately selling them medicine.

In the case of Cross et v People, 18 Colo. 321, the court held there was no violation of law under the following facts:

The defendant advertised in the newspapers that he was giving away pianos to advertise his shoe store. He distributed free of charge numbered cards indiscriminately to persons who called at his store, whether they made purchases or not, or to persons who registered their names at the store.

In this case the court held there was no consideration and, similarly, in this case, the proprietor undoubtly employed this

means of promoting the sales of his shoes or more widely advertising his business.

In the case of People v Cardas, 28 Pac. (2nd) 99, Cal. Supreme Court, the court held that where the defendant, an operator of a motion picture theatre, advertised by means of programs, newspapers and on the screen that the theatre would give away steamship excursion tickets as prizes to holders of lucky tickets which were distributed free to the people in the vicinity of the theatre and no such tickets were distributed in connection with the purchase of admission to the theatre at any time and where the winner was to be and was announced from inside and outside at the entrance to the theatre, this did not constitute a lottery since the element of consideration was lacking, and yet one may well conclude that this scheme, if such it may be termed, was employed to promote the business of the theatre.

The case of State v Bader et, 24 N. P. (N. S.) 186, decided April 10, 1922, has been presented to this court as precedent for holding the defendant guilty. In that case the defendant operated a restaurant and advertised that he would give away an automobile worth $1,300 to purchasers of meals at his restaurant as well as to all others. The testimony showed that the usual and ordinary procedure was to place the tickets on the tray with the meals served or to give them to the patron with his check. In rare instances a ticket was handed to a curious person who came into the restaurant and did not purchase a meal. The so-called giving away of the ticket without a meal was rather exceptional. There the court held the defendant guilty and in its opinion stated:

"Stripped of all disguises and fictions that surround it, this scheme conducted by the defendant William Bader develops to be a well planned lottery, often called a 'gift enterprise.' The claim that the tickets are given away free was a mere 'smoke screen' to conceal the real character of the undertaking. The tickets are not free in the sense of being given without consideration. To obtain them in the ordinary course a person was compelled to purchase a meal."

As we view it, this case may well be distinguished from that of the instant one. This court is not inclined to believe that the defendant's claim that the operation of his restaurant and a charge of fifty cents, for which the patron received luncheon and entertainment, was merely a smoke screen to conceal the real character of his undertaking. In fact, the conclusion is inevitable that the real business of the defendant is that of conducting a restaurant, supplying meals at a reasonable cost, with the addition of entertainment, and, incidentally thereto, and as an advertising feature for the purpose of attracting more people to his establishment, he gratuitously operated bingo. And one was not required to eat nor to spend or hazard any money in order to obtain a chance of winning a prize. Insofar as bingo was concerned all people were treated alike—the patrons of the luncheon room and the outside world.

The case of **Stevens v Times-Star, 72 Oh St 113**, decided by our Supreme Court, is illuminating. As stated by the court in that case:

"The vice of the project lies in the payment of money for the opportunity to win more money by a scheme of chance. It is not simply the winning of prizes that the statute seeks to inhibit. There may be such contests in which there is no element of gambling. If the contestant, or player, risk nothing, as where the prizes are offered in school by the teacher to scholars for the best essay, or in society by the host or hostess as an inducement to guests to attend social gatherings and indulge in games innocent in themselves, the winners to receive prizes as matter of grace and favor, and as a reward for skill, it is not considered that the function embraces any gambling element, whatever other objectionable features, if any, are present; but, where the players make up by payment of money, or other thing of value, a purse which affords the prizes, as in the ordinary raffle, the game is a gambling game, whether skill enters into the result or not."

In the case of Horner v U. S., 449, the Supreme Court held as follows:

"Consideration paid or passed in exchange for the chance to secure a prize is an essential element of a lottery. There is no law which prohibits the gratuitous distribution of one's property by lot or chance."

In conclusion, it may be accepted as the result of the majority of adjudicated cases that a valuable consideration ▬▬▬ ▬ must be paid, directly or indirectly, for a chance to draw a prize by lot, to bring the transaction within the class of lotteries or gift enterprises that the law prohibits as criminal.

The gratuitous distribution of property

by lot or chance, if not resorted to as a device to evade the law, and no consideration is derived, directly or indirectly, from the party receiving the chance, does not constitute the offense. In such cases the party receiving the chance is not induced to hazard money with the hope of obtaining a larger value, or to part with his money at all; and the spirit of gambling is in no way cultivated or stimulated, which is the essential evil of lotteries, and which our statute is enacted to prevent.

By reason of all of which the court finds the defendant not guilty.